[Civ. No. 5595. Second Appellate District, Division One.—November 7, 1929.]

PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant, v. PETROLEUM MIDWAY COMPANY, LTD. (a Corporation), Respondent.

Frank Karr, C. W. Cornell and R. E. Wedekind for Appellant.

Morgrage & Stanley and R. K. Barrows for Respondent.

HAHN, J., pro tem.—Appeal by plaintiff Pacific Electric Railway Company from a judgment for the defendant Petroleum Midway Company, Ltd., in an action brought to recover judgment for $657, claimed by plaintiff as owing from defendant for demurrage charges on certain carloads of freight consigned to the defendant.

The record fairly justifies the following brief statement of the material facts necessary to a consideration of the legal question which, in our opinion, is determinative of this appeal.

Plaintiff and appellant is a public carrier with tracks located in and about Wilmington, California. The defendant and respondent operates an oil refinery at Wilmington. During the month of June, 1923, an ocean freighter carry-

ing a consignment of manufactured steel for respondent, instead of docking at its usual wharf at San Pedro, where the respondent expected to receive the steel, unloaded its cargo at East San Pedro, and delivered to the Union Pacific Railroad Company the steel in question to be delivered over its rails to respondent at Wilmington. It required thirty-two cars to carry the steel, these cars being loaded and delivered in lots of six to eight cars at a time. The Union Pacific moved the cars over its tracks to Wilmington, where it delivered the cars to appellant's tracks for delivery by it to respondent. Upon receipt of the cars on appellant's track, Mann, appellant's agent at Wilmington, caused them to be placed in the general storage yards, because appellant's published tariff provided no rates for spotting cars received under the conditions affecting these cars on its public unloading track. Thereupon Mann telephoned to A. P. Lee, traffic manager for respondent, advising him that appellant had these cars of steel for delivery to respondent in its general storage yards, and that he could not spot them on its public unloading track because of the tariff difficulty. Lee protested the fact that the steel was in the hands of the railroad company, pointing out that under respondent's orders the steel was to be delivered to it by the steamship company at a wharf at San Pedro. In this conversation it was suggested by Mann that the tariff difficulty might be avoided if permission were obtained from some utility having a private side-track connected with appellant's track to place the cars of steel on such side-track for unloading. The conversation ended without any determination of the question as to where the cars were to be spotted, but with a definite declaration by Mann that before the cars could be spotted on appellant's public unloading track as requested by Lee, permission would have to be secured from the traffic department of appellant at Los Angeles.

Appellant contends that the result of the conversation was that Lee would take the necessary steps to solve the problem, either by securing permission from some private interest to use its side-track, or secure a ruling from the traffic department of appellant at Los Angeles that would enable the placing of the cars on appellant's public unloading track.

Respondent contends that the result of the conversation was that the matter of determining when and where the cars would be spotted was left entirely to appellant.

The testimony as shown by the record relating to the conversation in question does not indicate clearly what, if any, agreement was reached concerning the matter. However, it appears that P. H. Mann, appellant's agent at Wilmington, while on the witness-stand was asked the following question and gave the answer which follows:

"Q. As I understand, the reasons why these cars were not switched immediately onto the switch track was that you had no tariff to permit you to receive a car from another line and put it on your particular delivery track? A. That is right."

It appears that in due course the traffic department of appellant decided that the cars in question could be spotted on its public unloading track, and a charge of $2.50 per car made therefor. This was agreed to by respondent and the cars were so placed. The cars were promptly unloaded by respondent after they were placed on the unloading track.

The controversy here arises over the question as to whether or not the appellant is entitled to collect demurrage charges on the cars during the time they lay in its general storage yards awaiting determination of the question as to where they were to be placed for unloading.

The appellant's published tariff regulations contained the following rules relating to the matter under consideration:

"Rule 1: Section A: 'Cars . . . held for or by consignors or consignees for loading, unloading, forwarding direction or for any other purposes . . . are subject to these demurrage rules.'

"Rule 3: Section B–1: 'On cars held for orders . . . whether such cars have been placed in position to unload or not, time will be computed from the first 7:00 A. M. after the day on which notice of arrival is sent or given to the consignee or party entitled to receive the same.'

"Rule 2: Section A: 'Forty-eight hours' (two days) free time will be allowed for loading or unloading all commodities.'

"Rule 7: Section A: ' . . . After the expiration of free time allowed, the following charges per car per day, or fraction of a day, will be made until car is released:

" 'For each of the first four days, $2.00.

" 'For each succeeding day, $5.00.' "

It is appellant's contention that a "constructive placement" was made of the cars when they were placed in its general storage yards and respondent notified of their arrival. This contention has for its basis the assumption that after the conversation between Mann and Lee the cars were held by appellant "for orders" from respondent, and rule 3 of appellant's tariff regulations is pointed out as applying to the situation.

Respondent contends that the record does not support appellant's position that the cars were held awaiting respondent's orders, but that the delay was entirely due to appellant's difficulty in determining what placement it could make of the cars under its tariff regulations.

The court found that "Defendant did not detain or retain any of said cars in excess of the forty-eight hours free time allowed by said tariff, but on the contrary unloaded each and every one of said cars promptly upon the delivery thereof to it and redelivered and released the same to plaintiff within said forty-eight hour period."

We are of the opinion that respondent's contention must be sustained, for the reason that there is abundant evidence in the record to support the conclusion that the cars in question were not held by appellant in its storage yard for respondent's orders, but were held for appellant to determine the matter of tariff rates applicable. With this conclusion, it readily follows that the finding complained of is supported by the evidence and that the judgment finds support both in the evidence and in law.

The judgment is affirmed.

Houser, Acting P. J., and York, J., concurred.